## Trustees of Baptist Church of Paris v. Paris Lumber & Manufacturing Company.

(Decided September 24, 1915.)

Appeal from Bourbon Circuit Court.

Appeal and Error—Question of Fact—What Will Authorize Reversal of Judgment.—Ordinarily, the Court of Appeals will be reluctant to reverse the judgment of the judge of the circuit court upon a question of fact, but it will do so whenever it is reasonably apparent from the record that the judgment is not supported by, or is contrary to, the weight of the evidence. In this action, brought by a material man to enforce a lien for material alleged to have been furnished in the construction of a church, evidence examined and held insuffcient to authorize the judgment enforcing the lien.

TALBOTT & WHITLEY for appellants.

CLINE & HUTCHCRAFT and W. B. ARDERY for appellee.

Opinion of the Court by Judge Settle.—Reversing.

This action was instituted by appellee, Paris Lumber & Manufacturing Company, to recover of appellants, Trustees of the Baptist Church of Paris, $439.50, alleged to be due it for material furnished through George Minter & Son, contractors, for use in the erection of a Baptist Church in the city of Paris, and for which it asserted a material man's lien on the church under the statute.

The answer of the appellants denied liability for the debt and resisted the enforcement of the lien. It was their contention that the items of material constituting appellee's claim of $439.50 were, if used at all in the erection of the Baptist Church, which was denied, furnished and paid for prior to December 18, 1910, and that the statement for the lien attempted to be asserted for the payment of the claim was not, as provided by Section 2468, Kentucky Statutes, filed in the office of the clerk of the Bourbon county court within six months next after the furnishing of such material, but, having been filed after the expiration of six months, no lien was created thereby against the church building or ground upon which it is situated.

It was further contended by appellants, that as trustees of the Baptist Church of Paris, they entered into a contract with George Minter & Son whereby the latter undertook to construct for them a church building in Paris, Kentucky, and that they, Minter & Son, purchased of appellee lumber and other material for use in the construction of the church building; that they were informed by Minter & Son that the bill of lumber and other material furnished them by appellee for use in the church building amounted to $3,500.00 and no more, and this amount appellants paid appellee before the completion of the church building and prior to December 18, 1910, on which date the church building was formally dedicated, and after which no work whatever was done thereon.

It is admitted that the statement constituting the basis of the lien attempted to be asserted by appellee was filed in the county clerk's office June 20, 1911, which was more than six months after the dedication of the church. It is, however, contended by appellee that the items of material embraced in the account and lien in suit were furnished appellants through Minter & Son, December

31, 1910, and January 3, 1911, respectively, and the whole thereof later used in completing the church building.

On the hearing, the circuit court sustained the contention of the appellee, hence it was given judgment against appellants for the $439.50 sued for, and for the enforcement of the lien asserted therefor; the judgment directing that the church building and lot be sold in satisfaction of the debt. Appellants complain of the judgment, hence this appeal.

The only question presented by the record for decision is one of fact. Ordinarily this court is reluctant to reverse the judgment of the circuit court upon a question of fact, but it will do so whenever it is reasonably apparent from the record that the judgment of that court is not supported by, or is contrary to, the weight of the evidence; and our consideration of the evidence contained in the record of this case convinces us of the incorrectness of the judgment appealed from. Only two of the several witnesses introduced in behalf of appellee claimed to have any knowledge of the items of material contained in the account sued on. One of these, Stivers, appellee's manager, testified that he caused the material to be loaded on a wagon and directed the driver to deliver it at the Baptist Church to Minter & Son, by whom it had been ordered, but he admitted that he did not know and could not say that the material was, in fact, delivered as directed, or that it was used in the construction of the Baptist Church.

According to Stivers' testimony, the driver of the wagon upon which the material was loaded died before this action was instituted, consequently his testimony could not be obtained; and no witness, not even the Minters, positively testified that the material in question was delivered at or used in the church. Obviously, appellee cannot enforce the lien asserted for the material unless it was used on the church and the statement required to create the lien was filed within six months of such delivery and use. It was claimed by Stivers that there were two loads of the material; the first having been delivered December 31, 1910, and the second January 3, 1911. The only proof attempted to be furnished of these dates were certain entries in appellee's ledger. It was admitted by Stivers that the charges for the material were first made by him on slips of paper, and that he later transferred these charges to the ledger and then

destroyed the slips. Whether the slips of paper contained any dates or specific description of the items charged does not appear, but, waiving their non-production and the question whether the entries transferred to the ledger should be regarded as original entries, in view of the fact that they were admittedly not made at the time the material was loaded on the wagon and directed to be taken to the church, in the absence of the slips, it is not perceived that the entries in the ledger are to be accepted as conclusive of the dates, respectively, of the delivery of the materials.

The accuracy of the account appearing in the ledger may well be doubted. At the top of the page containing it the date December 31, 1910, appears, but there is no date set opposite either of the two items of material alleged to have been furnished the Baptist Church, which appear below other charges on this page, followed by yet others, among them items charged against Minter & Son for material furnished by appellee, as stated in the entries, October 25, 1910, on a job of work they performed about that time for one Brown. It is fairly apparent that Stivers made charges on the same page without reference, except as to the Brown matter, to the dates when the materials were furnished. How, then, can it be said that the ledger shows the items of material charged to the Baptist Church were furnished or the charges entered in the ledger on the date given at the top of the page, viz., December 31, 1910, when the items of material charged, as having been furnished Minter & Son on the Brown job October 25, 1910, more than two months previously, were entered on the same page of the ledger after and below the entries as to the material appellee claims to have furnished the Baptist Church?

It is equally doubtful, from the testimony of George Minter, appellee's only witness whose connection with the transactions involved ought to have enabled him to speak understandingly, whether the items of material for which the lien is claimed were used on the church building after its dedication or at all. George Minter seems to have testified two or three times. The following questions and answers are parts of the testimony he first gave:

"Q. Mr. Minter, after the dedication, did you do any work on the Baptist Church? After the 18th day of December did you do any work on the Baptist Church? A.

Set up some stone steps and put in three little wooden steps after the stone steps were set in.  *  *  * Q. After the dedication, Mr. Minter, did you put in a rail on the stairway, or rail of some sort after the dedication? A. No, I didn't put in any rail. We had the rail there. * * * Q. The question is whether you put it in after the dedication or not? A. Well, I think I did; yes, sir. Q. I will ask you to examine these specifications of material delivered by the Paris Lumber & Manufacturing Company and state whether or not the material is listed there that went into the rail? A. Well, just wait now a minute. I think this first item which he says was delivered December 31st went into the back steps, all of that did in my opinion. That was there before the dedication. Q. But you don't find there the material that went into the rail? A. Yes, I do, one piece 1¾x3¼x12 yellow pine that went into the rail. Now here is another item down here, 3 pieces, 1⅛x12x16 delivered on January 3rd; I don't know where we could have used that. Have no idea because 3 pieces, 1⅛x12x16—48 lineal that would be—we only had three steps, the little outside steps that I told you about after setting up the stone steps; that would represent as much as 12 steps 14 feet long; I can't tell where that went. Q. Well, couldn't that have been used for anything besides steps? A. No, sir, 3 pieces 1⅛x12. Q. You don't remember that? A. No, sir, can't imagine what that was used for. The house was practically complete before the dedication, but this last item I couldn't see where we could possibly have used that anywhere.''

From a floor plan of the church found in the record it will be found that there are ''stone steps'' and ''concrete steps'' marked as entering into the construction of the church building. The stone steps lead to the pastor's study and above them are four wooden steps. It conclusively appears from the evidence, however, that the concrete steps were abandoned and never put in, wooden steps being used in place of the concrete leading down into the basement. According to the testimony of George Minter, the stone steps leading to the pastor's study were put in after the dedication of the church on December 18th, but he was uncertain whether the rail was constructed before or after that date. In a subsequent deposition Minter testified that the materials which Stivers claims were furnished December 31st went into the back steps (marked ''concrete steps'') and that these steps

were there before the dedication. It is patent, therefore, from Minter's testimony, that the items which Stivers claims he furnished on the 31st of December were, in fact, not furnished on that date but furnished and used in the construction of the church prior to its dedication, which, as already stated, took place December 18, 1910. As to the remaining items claimed by Stivers to have been furnished January 3, 1911, and after the dedication, it is further patent from Minter's deposition that he failed to prove that they went into the church at all.

Following the taking of the deposition of Minter, appellants took those of a number of witnesses, including two of the trustees, the pastor of the church and janitress of the building, from all of which it conclusively appears that the wooden steps at the point on the plan marked "stone steps," were in at the time of the dedication and were then in use. It is true that two stone steps were added to the building below these wooden steps by a colored stone mason after the dedication, but the stone steps were furnished by the stone mason and not by appellee, nor did the latter have anything to do, with the work of putting in the steps. The depositions of these witnesses in behalf of apellants also conclusively prove that the wooden steps at the point on the plan marked "concrete steps," which were used in lieu of concrete steps for reaching the basement of the church, were constructed before the dedication, as admitted by George Minter in his first deposition. It is true that Minter, upon being recalled, following the taking of the above depositions by appellants, withdrew his previous statement that the steps last mentioned were put in before the dedication and claimed that they were made to rest at the bottom upon the two stone steps, and as the latter were conclusively shown to have been put in after the dedication, the wooden steps were also constructed after the dedication. It clearly appears, however, that Minter was mistaken in this conclusion, for the testimony of appellants' witnesses above referred to, and that of others introduced by them, overwhelmingly establishes the fact that the wooden steps last mentioned do not rest on the stone steps at all, but upon woodwork; hence Minter's assumption that the wooden steps rested on the stone steps and could not have been put in until after the stone steps were placed there, is wholly without foundation. Moreover, after the contradiction of Minter's statement by ap-

pellants' witnesses as to the wooden steps resting on the stone steps, neither Minter nor any other witness was reintroduced by appellee to support the statement of Minter, or to prove that they had examined the wooden steps to see if they rested on the stone steps instead of on woodwork, as stated by appellants' witnesses.

Our analysis of the evidence convinces us that the items of material for which appellee is attempting to enforce the statutory lien in this case were furnished to appellants, through Minter & Son, and used in the construction of the Baptist Church, before its dedication and more than six months before the filing in the county clerk's office of the statement constituting the basis of the alleged lien. It therefore follows that the lower court erred in holding that appellee was entitled to recover of appellants the $439.50 sued for, and also erred in adjudging the enforcement of the lien asserted therefor; hence the judgment is reversed and cause remanded with directions to that court to dismiss the action.